# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| v. | : CR NO. 09-473 |
| | : |
| **JAMES ROBINSON** | : |
| | : |

**DuBOIS, J.**                                                                                    **October 22, 2010**

## M E M O R A N D U M

**I.      INTRODUCTION**

Presently before the Court is defendant James Robinson's Motion to Suppress Physical Evidence Obtained in Violation of the Fourth Amendment. An evidentiary hearing was held on October 8, 2010. For the reasons set forth below, defendant's motion is denied.

**II.     BACKGROUND**

   **A.      Facts**

This case arises out of the arrest of defendant, James Robinson, on February 22, 2009 for knowingly possessing with intent to distribute 55 grams of cocaine base ("crack cocaine") in violation of 21 U.S.C. 841(a)(1) et seq. Defendant moved to suppress the drug evidence, arguing that a Philadelphia police officer violated his Fourth Amendment rights in obtaining the crack cocaine. Specifically, defendant argues that (1) the officer lacked a reasonable suspicion that criminal activity was afoot at the time he detained defendant, (2) the officer's frisk of defendant was not justified by a reasonable belief that defendant was armed and dangerous, and (3) the officer's frisk was excessively intrusive and thus violated the plain feel doctrine. (Def.'s Mot. to Suppress; Def.'s Mem. of Law in Supp.)

The relevant facts for purposes of this motion are as follows:

At approximately 1:45 p.m. on February 22, 2009, Officer James Robertson of the Philadelphia Police Department received a radio call based on an anonymous 911 call reporting an assault of a pregnant female by a light-complexioned black male wearing a tan shirt and blue pants at the intersection of 27th Street and Cecil B. Moore Avenue in North Philadelphia. (Suppression Hr'g Tr. 6, 29, 42, Oct. 8, 2010.) Officer Robertson drove his patrol car to the intersection, arriving approximately thirty seconds after receiving the radio call. (Id. at 8.) As he approached the intersection, Officer Robertson observed the defendant standing at the southwest corner of the intersection dressed in a tan shirt and blue pants. (Id. at 10, 16.) He did not observe a pregnant woman in the vicinity. (Id. at 31.)

Officer Robertson exited his patrol car, announced himself, and approached the defendant. (Id. at 10-11.) As he approached the defendant, Officer Robertson observed that the defendant was sweating despite being dressed lightly for the cold weather. (Id. at 12.) Officer Robertson asked the defendant "what was going on," to which the defendant responded that "nothing was going on." (Id.) The defendant refused to provide the officer with his name and stated that he did not have any identification. (Id.) Officer Robertson then took the defendant aside and performed a pat-down to check for weapons. (Id. at 16-17.) In the course of the pat-down, Officer Robertson felt a bulge in defendant's left front pocket, which Officer Robertson believed to be small plastic vials containing narcotics contraband. (Id. at 19-20.) Officer Robertson removed the suspected narcotics from defendant's pocket and placed defendant in handcuffs. (Id. at 20.) He then conducted a further search and recovered additional suspected narcotics and cash but no weapons. (Id. at 20-21.) The suspected narcotics later tested positive

for crack cocaine. (Id. at 25.)

### B. Defendant's Motion to Suppress Physical Evidence

In his Motion to Suppress Physical Evidence and his Supplemental Memorandum of Law in Support of His Suppression Motion, defendant makes three arguments for the suppression of the crack cocaine. First, defendant contends that he was detained by Officer Robertson before the officer had corroborated the anonymous tip sufficiently to establish reasonable suspicion that criminal activity was afoot. (Def.'s Mot. to Suppress at 3-4.) Second, defendant contends, citing Brown v. Texas, 443 U.S. 47, 51-52 (1979), that Officer Robertson's frisk was unsupported by any specific, objective facts that Officer Robertson could point to as indicating that the defendant was armed. (Id. at 4.) Third, in his Supplemental Memorandum, defendant argues that the officer's frisk was excessively intrusive and thus went beyond what is allowed under the plain feel exception to the warrant requirement. (Def.'s Supplemental Mem. of Law at 2.) The Court will treat these arguments in the order presented.

## II. LEGAL STANDARD

"On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." United States v. Ritter, 416 F.3d 256, 261 (3d Cir. 2005) (citing United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995)). The applicable burden is proof by a preponderance of the evidence. United States v. Matlock, 415 U.S. 164 (1974).

## III. DISCUSSION

### A. Officer Robertson's Terry Stop Was Supported by Reasonable Suspicion

#### 1. Legal Standard – Anonymous Tips and Reasonable Suspicion

Because the impetus for Officer Robertson's investigation of the defendant came from an anonymous tip, the question of whether his detention of the defendant passes Fourth Amendment scrutiny hinges on whether Office Robertson observed sufficient information to corroborate the tip before he detained the defendant. In Terry v. Ohio, the Supreme Court announced an exception to the probable cause requirement whereby an officer may temporarily detain a citizen where the officer has a reasonable suspicion that criminal activity may be afoot. 392 U.S. 1, 21-22, 30 (1968). In subsequent cases, the Supreme Court has clarified the circumstances in which an anonymous tip like the one at issue in this case can be the basis for an investigative Terry stop.

In Alabama v. White the Court announced a "totality of the circumstances" test to determine whether an anonymous tip could give rise to a reasonable suspicion. 496 U.S. 325, 328 (1990). The test emphasizes both an officer's ability to corroborate significant aspects of the tip, and the tip's ability to predict future events. Id. at 332. In White the court found that reasonable suspicion existed to justify stopping a car based on an anonymous phone tip that the car contained drugs. Id. at 326. In reaching this conclusion, the Court emphasized the detailed nature of the tip, which included predictions about when the defendant would leave and in what direction she would travel that the police were able to corroborate before initiating the stop. Id. at 331. Notably, the Court did not require that every detail of the tip be corroborated before the stop. Id.

In Florida v. J.L., the Court applied the same totality of the circumstances standard used

in White, but found that the anonymous tip in that case, which simply gave a location and basic description of a man and alleged that he had a gun, lacked the "moderate indicia of reliability" necessary to justify a Terry stop. 529 U.S. 266, 271 (2000). Notably, in J.L., the anonymous tip constituted the sole justification for the stop and frisk, id. at 268, and was corroborated only to the extent of the defendant's "readily observable location and appearance." Id. at 272. The court held that "[t]he reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." Id.

The Third Circuit has articulated five factors that can indicate the reliability of a tip: (1) whether the tip was relayed to an officer through a face-to-face interaction with an informant, (2) whether the informant can be held responsible if her allegations turn out to be fabricated, (3) whether the tip contains information that would not be available to just any observer, (4) whether the person providing the tip has recently witnessed the alleged criminal activity or an officer can infer the same, and (5) whether the tip includes predictions that can be corroborated. United States v. Brown, 448 F.3d 239, 249-50 (3d Cir. 2006).

In addition to the reliability of an anonymous tip, the Supreme Court has identified a number of additional factors relevant to determining whether an officer has a reasonable suspicion to justify a Terry stop. Among these are a suspect's apparent nervousness and the crime level of the area. Illinois v. Wardlow, 528 U.S. 119, 124-25; United States v. Sokolow, 490 U.S. 1, 3 (1989). Moreover, in assessing the totality of the circumstances, courts should permit officers to draw on their training and experience and on reasonable inferences made from the information available to them. United States v. Nelson, 284 F.3d 472, 475 (3d Cir. 2002).

2. <u>Analysis</u>

The record in this case discloses that the officer observed sufficient indicia of reliability to corroborate the anonymous 911 call. In addition to matching the flash description of a light-complexioned black male wearing a tan shirt and blue pants, (Suppression Hr'g Tr. 29, Oct. 8, 2010), Officer Robertson observed that defendant was nervous. Specifically, Officer Robertson testified that the defendant kept his hands in his pockets throughout the encounter (<u>id.</u> at 11, 13), was sweating and "kind of shaking" (<u>id.</u> at 11), and that he hesitated suspiciously when asked to remove his hands from his pockets (<u>id.</u> at 17). The Court accords particular weight to Officer Robertson's testimony that the defendant was sweating despite being underdressed for a cold February day. In addition to indicating nervousness, defendant's sweating is corroborative of the illegal activity reported in the 911 call: a violent physical assault. <u>See</u> <u>J.L.</u>, 529 U.S. at 272. As such, there existed more than sufficient "moderate indicia of reliability" to corroborate the anonymous 911 call and furnish Officer Robertson with the reasonable suspicion necessary to justify his <u>Terry</u> stop of the defendant. <u>See id.</u> at 271.

This analysis does not settle the question of whether the stop was lawful because under <u>White</u> and <u>J.L.</u> a stop is lawful only if supported by reasonable suspicion before the subject is detained. Thus the question facing the Court is what Officer Robertson observed prior to seizing the defendant. The Third Circuit has stated a two-part test for determining when a person is seized for purposes of the Fourth Amendment: "A seizure occurs when there is either (a) a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful, or (b) submission to a show of authority." <u>United States v. Brown</u>, 448 F.3d 239, 245 (3d Cir. 2006) (internal quotations omitted). "[T]he test for existence of a 'show

of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." Id.

    On cross examination at the evidentiary hearing, Officer Robertson testified as follows:

    Q: Okay. So, sir, you would agree with me that as you were approaching [the defendant], asking him what was going on he was not free to leave, right?

    Officer Robertson: Right.

    Q: I mean you weren't just going to let him walk away?

    Officer Robertson: Yes.

    Q: And you made that clear to him?

    Officer Robertson: Yes.

    Q: Okay. And as you were, [sic] and once he gave you that answer that nothing was going on you wanted to know more, correct?

    Officer Robertson: Correct.

    Q And he certainly wasn't free to go until you got further information?

    Officer Robertson: True.

    Q: And you made that clear to him?

    Officer Robertson: Yes.

(Suppression Hr'g Tr. 35, Oct. 8, 2010.)

    The only thing that this testimony reveals unambiguously is that Officer Robertson thought he had made it clear to the defendant that the defendant was not free to leave. Officer Robertson's subjective understanding of what he communicated to the defendant is not

determinative of whether a reasonable person in defendant's position would have thought he was free to leave. See Brown, 448 F.3d at 245.

There is no evidence of how Officer Robertson communicated to the defendant that he was not free to leave. It is clear from the record that: (1) Officer Robertson approached the defendant, who was initially facing away from him, but turned towards Officer Robertson as he approached, (Suppression Hr'g Tr. 11, Oct. 8, 2010), (2) Officer Robertson began asking the defendant questions about what was happening (id.), (3) Officer Robertson observed that the defendant was underdressed, shaking, and sweating (id.), and (4) Officer Robertson believes that at some point during this interaction he made it clear to the defendant that the defendant was not free to leave. The precise order of these events is unclear from the testimony. Given the ambiguity of the record, however, the Court must assume what common sense would dictate: If Officer Robertson made it clear to the defendant that the defendant was not free to leave, he could only have done so after the defendant turned to face him and the two began to converse. Thus, Officer Robertson's show of force, even if sufficient to constitute a detention under Brown, could only have occurred after he observed the defendant sweating and shaking in a manner that strongly corroborated the specific illegal activity – a violent assault – described in the 911 call.

Two additional factors also favor the government's contention that Officer Robertson had a reasonable suspicion before he detained the defendant. First, the 911 call at issue concerned an ongoing violent assault on a public sidewalk and described the defendant in detail. It thus would have been reasonable for Officer Robertson to assume the call was made by someone who had directly witnessed the criminal behavior alleged. The Third Circuit stated in Brown that a tip from someone who has directly witnessed the criminal behavior is inherently more reliable than a

tip in which the source of the information is not readily apparent. 448 F.3d at 245. Second, Officer Robertson testified that the area where he approached the defendant was a high-crime area. (Suppression Hr'g Tr. 5, Oct. 8, 2010.) While that fact standing alone is not sufficient to give rise to a reasonable suspicion of criminal activity, police officers are permitted to consider an area's crime level when responding to a suspect's suspicious behavior. Wardlow, 528 U.S. at 124.

In sum, while the record is ambiguous as to the precise point at which Officer Robertson detained the defendant, the totality of the circumstances makes clear that Officer Robertson had ample opportunity to corroborate the anonymous emergency 911 call and develop a reasonable suspicion that the defendant was engaged in criminal activity before he detained him.

### B. Officer Robertson's Terry Frisk of Defendant Was Permissible

Defendant contends that Officer Robertson's pat-down was unsupported by any "reasonable belief that [the defendant] was armed and presently dangerous" as required under Ybarra v. Illinois, 444. U.S. 85, 92-93 (1979). (Def.'s Mot. to Suppress at 4.) Indeed, it is well established that in order for a protective frisk to be permitted under the Fourth Amendment, an officer must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21.

The record in this case includes a number of articulable facts indicating that the defendant was armed and presently dangerous that justify Officer Robertson's protective frisk. Most obvious among these are the signs of nervousness on the part of the defendant, including Officer Robertson's observations that the defendant was sweating and shaking and that he kept his hands in his pockets and hesitated in removing them when asked to do so. (Suppression Hr'g Tr.11, 17,

Oct. 8, 2010.)

Moreover, Officer Robertson's reasonable suspicion the defendant had perpetrated a violent assault is, by itself, sufficient to provide a reasonable belief that the defendant was armed and presently dangerous. The Third Circuit has found repeatedly that a reasonable suspicion that a suspect was engaged in a violent crime is sufficient to justify a frisk. See, e.g., United States v. Roane, 356 Fed. Appx. 564, 566 (3d Cir. 2009) (finding officer's protective frisk was reasonable where a suspect matched the description given by a robbery victim even though the robbery victim had not specifically mentioned a weapon); United States v. Shambry, 392 F.3d 631, 635-36 (3d Cir. 2004) (upholding officer's frisk of an individual whom the officer recognized as a person who, weeks before, had intentionally struck the officer with his car); see also Goodson v. City of Corpus Christi, 202 F.3d 730, 738 (5th Cir. 2000) (stating that a frisk is permissible where a suspect is wanted based on a report of domestic violence).[1]

In sum, an officer need not have specific evidence that a suspect is armed before conducting a protective pat-down. Rather a frisk will be permissible where the officer can rationally infer that a person who had committed the kind of crime that the officer has reasonable suspicion to believe the suspect committed might likely have a weapon. Clearly, in this case, where the officer had a reasonable suspicion that the defendant had committed a violent assault of a pregnant woman on a city street and was confronted additionally with indications of the defendant's nervousness and other suspicious behavior, the officer was reasonable in his belief

---

[1] The Third Circuit has even found protective pat-downs reasonable in the investigation of some non-violent crimes. In United States v. Edwards, the court found a Terry frisk permissible during an investigation of bank fraud, reasoning "[t]hat this fraud occurred at a bank in broad daylight could lead one to believe that the perpetrators might have armed themselves to facilitate their escape if confronted." 53 F.3d 616, 618 (3d Cir. 1995).

that the suspect might likely be armed.

### C. Officer Robertson's Terry Frisk of Defendant Was Not Unconstitutionally Intrusive

Defendant further contends that Officer Robertson's frisk was intrusive beyond what the Fourth Amendment permits for protective pat-downs. (Def.'s Supp. Mem. of Law at 1.) The plain feel doctrine applies to seizures of non-threatening contraband discovered during protective frisks and requires that the incriminating character of the object felt must be readily apparent to the officer without extensive manipulation. Minnesota v. Dickerson, 208 U.S. 366, 377 (1993). The defendant contends the incriminating nature of the contraband in this case, which consisted of small plastic vials containing crack cocaine, could not have been immediately apparent, but rather that identification of the vials through the defendants' clothing necessarily would have required extensive manipulation beyond what is constitutionally permissible in a protective pat-down. (Def.'s Supp. Mem. of Law at 2-3.)

While language in Dickerson suggests that the criminality of the object must be "immediately apparent" to the frisking officer when touched, id. at 375, in applying Dickerson the Third Circuit has adopted a flexible approach, "reject[ing] a narrow focus on how quickly and certainly the nature of an object felt during a Terry search is known and on how much manipulation of a person's clothing is acceptable." United States v. Yamba, 506 F.3d 251, 258 (3d Cir. 2007). Rather, according to the Third Circuit, the proper question is whether the officer develops probable cause to believe that an object is contraband before he determines that the object is not a weapon. Id. at 259.

In this case, there is no testimony of extensive manipulation of the objects seized. Officer Robertson testified that he patted down the defendant's pockets using only his open palm,

(Suppression Hr'g Tr. 37-38, Oct. 8, 2010), and that he could hear plastic moving under his hand in a way that made him believe, on the basis of his training and prior experience, that he was feeling narcotics contraband. (Suppression Hr'g Tr. 19-20, Oct. 8, 2010.) Officer Robertson testified further that even after he had determined that the objects he felt were narcotics contraband, he had still not ruled out the possibility of there being a weapon in the same pocket. Id. at 20.

The testimony in this case is similar to that presented in Yamba. See 506 F.3d at 254. In that case, too, the frisking office identified narcotics through a suspect's pocket based in part on his training and experience with narcotics stored in plastic containers. See id. The Court notes additionally that the bulky shape and substantial quantity of plastic vials removed from defendant's pocket lends credibility to Officer Robertson's claim that he was able to feel and identify the objects through the fabric of the defendant's pocket. (See Gov.'s Ex. 2.) Moreover, the bulkiness of the objects in question supports the government's position that it took longer to rule out the possibility that the objects were a weapon or that they concealed one.

In sum, the Court finds Officer Robertson's testimony credible and concludes that probable cause to believe the objects were narcotics existed prior to the point at which Officer Robertson ruled out the possibility that the objects were a weapon or that they concealed one. Thus the search did not violate the Fourth Amendment.

**IV.    CONCLUSION**

For the foregoing reasons, defendant's motion to suppress evidence is denied. An appropriate order follows.