**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|                                      |   |                       |
|--------------------------------------|---|-----------------------|
| **UNITED STATES OF AMERICA**         | : | **CRIMINAL ACTION**   |
|                                      | : |                       |
| **v.**                               | : |                       |
|                                      | : |                       |
| **JAMES ROBINSON**                   | : | **NO. 09-473**        |

_____  :

**DuBOIS, J.**                                                    **March 22, 2012**

**M E M O R A N D U M**

## I.   INTRODUCTION

Defendant James Robinson is charged by Superseding Indictment with possession with intent to distribute cocaine base ("crack") (referred to as "crack cocaine").  Presently before the Court are two motions: defendant's Motion to Dismiss Indictment / Motion for Release on Conditions ("Speedy Trial Motion") and defendant's Motion to Reopen Suppression Hearing.  The Court heard oral argument on March 13, 2012, and, for the reasons set forth below, denies the Speedy Trial Motion and grants in part and denies in part the Motion to Reopen Suppression Hearing.

## II.   BACKGROUND

This Memorandum recounts the procedural history of the case in four sections: (1) proceedings from the arrest through August 2010; (2) the October 8, 2010, suppression hearing; (3) proceedings from October through December 2010; and (4) proceedings from October 2011 through January 2012.

### A.   Proceedings from Arrest Through August 2010

Defendant was arrested on February 22, 2009, and was originally charged in the Municipal Court of Philadelphia, where a preliminary hearing was held on April 21, 2009.  The

-1-

United States Attorney's Office then adopted the prosecution. A federal grand jury returned an Indictment on July 15, 2009, charging defendant with one count of possessing with intent to distribute approximately fifty-five grams of crack cocaine, in violation of 21 U.S.C. § 841 et seq.[1]  Defendant's initial appearance was before then-Chief Magistrate Judge Thomas Rueter on July 28, 2009.  On July 30, 2009, defendant was arraigned, entered a plea of not guilty, and stipulated to pretrial detention.  (July 30, 2009, Bail Status and Order, Docket no. 7, at 1.) Defendant's trial date was set for October 19, 2009.  The Court granted defendant's unopposed motion for a continuance on October 9, 2009, and continued the trial to February 8, 2010, pursuant to 18 U.S.C. §§ 3161(h)(8)(A), (h)(8)(B)(i), and (h)(8)(B)(iv).  Defendant agreed to the continuance.  (Oct. 9, 2009, Order, Docket no. 18, at 2.)

On December 21, 2009, Catherine Henry, Esquire, defendant's counsel, filed Defendant's Motion to Suppress Physical Evidence Obtained in Violation of the Fourth Amendment ("Motion to Suppress").  On January 21, 2010, she filed an additional unopposed continuance motion.  On January 29, 2010, the Court granted defendant's second continuance motion, scheduled a suppression hearing for April 9, 2010, and continued the trial to May 10, 2010, pursuant to 18 U.S.C. §§ 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv).  Defendant again agreed to the continuance.  (Jan. 29, 2010, Order, Docket no. 34, at 2.)  Ms. Henry then requested a

---

[1] The Indictment charged defendant with possessing with intent to distribute fifty grams or more of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A) (version effective July 27, 2006). Because defendant had two prior felony drug convictions, he was subject to a mandatory sentence of life imprisonment.  See id.  On August 3, 2010, Congress enacted the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372, which, inter alia, modified the penalties for crack cocaine offenses.  Following enactment of the FSA, 21 U.S.C. § 841(b)(1)(B)(iii) applies to the quantity of crack cocaine defendant allegedly possessed.  The government filed a Superseding Indictment on March 15, 2012, which refers to the amended statutory provisions.  Defendant is now subject to a mandatory minimum sentence of ten years' incarceration.  Id. § 841(b)(1)(B).

postponement of the suppression hearing because the parties were "optimistic" that the case would "result in a non trial disposition." (March 25, 2010, Order 1.) Accordingly, the Court postponed the suppression hearing. Ms. Henry next filed a third unopposed motion for a continuance on April 26, 2010. The Court granted that motion by Order dated May 6, 2010, pursuant to 18 U.S.C. §§ 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv), and continued the trial to November 1, 2010. Defendant agreed to the continuance. (May 6, 2010, Order, Docket no. 44, at 2–3.) The Court also scheduled the hearing on the suppression motion and any other motions requiring a hearing for October 8, 2010.

Ms. Henry filed a Motion to Withdraw as Counsel on June 11, 2010, averring that defendant had requested a new attorney. (June 11, 2010, Mot. Withdraw Counsel 1.) The Court held a hearing on August 26, 2010, at which the Court granted Ms. Henry's motion and appointed Kenneth C. Edelin, Esquire to represent defendant. The suppression-hearing date and trial date were not changed at that time. On October 1, 2010, Mr. Edelin filed Defendant's Supplemental Memorandum of Law in Support of His Suppression Motion ("Defendant's Supplemental Memorandum"), advancing an additional argument in support of the Motion to Suppress.[2]

**B.     October 8, 2010, Suppression Hearing**

At the October 8, 2010, hearing on the Motion to Suppress, the government presented a single witness, Philadelphia Police Officer James Robertson, who was the arresting officer. The

---

[2] In addition to the arguments raised in the briefs, Mr. Edelin argued at the hearing that defendant was under arrest before Officer Robertson handcuffed him. (See, e.g., Oct. 8, 2010, Hr'g Tr. 60 ("Once [the officer] gets out of his car and says [defendant is] not free to leave and tells us he's not free to leave[,] he's arrested at that point.").)

government also introduced photographs of the intersection where defendant was arrested and of

the narcotics recovered from his pocket.  The Court summarized the evidence as follows:

> At approximately 1:45 p.m. on February 22, 2009, Officer James
> Robertson of the Philadelphia Police Department received a radio
> call based on an anonymous 911 call reporting an assault of a
> pregnant female by a light-complexioned black male wearing a tan
> shirt and blue pants at the intersection of 27th Street and Cecil B.
> Moore Avenue in North Philadelphia.  Officer Robertson drove his
> patrol car to the intersection, arriving approximately thirty seconds
> after receiving the radio call.  As he approached the intersection,
> Officer Robertson observed the defendant standing at the
> southwest corner of the intersection dressed in a tan shirt and blue
> pants.  He did not observe a pregnant woman in the vicinity.
>
> Officer Robertson exited his patrol car, announced himself, and
> approached the defendant.  As he approached the defendant,
> Officer Robertson observed that the defendant was sweating
> despite being dressed lightly for the cold weather.  Officer
> Robertson asked the defendant "what was going on," to which the
> defendant responded that "nothing was going on."  The defendant
> refused to provide the officer with his name and stated that he did
> not have any identification.  Officer Robertson then took the
> defendant aside and performed a pat-down to check for weapons.
> In the course of the pat-down, Officer Robertson felt a bulge in
> defendant's left front pocket, which Officer Robertson believed to
> be small plastic [packets] containing narcotics contraband.  Officer
> Robertson removed the suspected narcotics from defendant's
> pocket and placed defendant in handcuffs. He then conducted a
> further search and recovered additional suspected narcotics and
> cash but no weapons.  The suspected narcotics later tested positive
> for crack cocaine.[3]

United States v. Robinson, No. 09-cr-473, 2010 WL 4181736, at *1 (E.D. Pa. Oct. 25, 2010)

(transcript citations omitted).

The Court denied defendant's Motion to Suppress by Memorandum and Order dated

October 22, 2010.  In concluding that Officer Robertson had not violated defendant's Fourth

---

[3] As discussed infra, the Court's October 22, 2010, Memorandum mistakenly referred to "vials"
instead of packets or baggies.

Amendment rights, the Court first held that the officer had a reasonable suspicion that defendant was engaged in criminal activity before detaining him.  Robinson, 2010 WL 4181736, at *3–5. The Court next rejected defendant's argument that the officer's frisk was not supported by a reasonable belief that defendant was armed and dangerous, given that "the officer had a reasonable suspicion that the defendant had committed a violent assault of a pregnant woman on a city street and . . . [demonstrated] nervousness and other suspicious behavior."  Id. at 5–6. Finally, the Court concluded that the Terry frisk did not violate the plain feel doctrine because "probable cause to believe the objects were narcotics existed prior to the point at which Officer Robertson ruled out the possibility that the objects were a weapon or that they concealed one." Id. at *6–7.

### C.      Events of October through December 2010

When the Court issued the Memorandum and Order described above, defendant's trial was scheduled for November 1, 2010.  On October 27, 2010, the government filed a motion to continue the trial because an essential witness—Officer Robertson—would be unavailable due to his wife giving birth.  (Mot. United States Continuance Unavail. Essential Witness 1–2.)  The Court ordered that the time from the filing of the Motion of the United States for Continuance for Unavailability of Essential Witness until "a hearing on said motion [was] concluded or other prompt disposition [was] made" be excluded for Speedy Trial Act purposes.  (Oct. 27, 2010, Order, Docket no. 64.)  That same day, the Court received notice that defendant wished to enter into a plea agreement.  Therefore, the Court scheduled a hearing for November 1, 2010—the scheduled trial date—to accept defendant's change of plea or, in the alternative, to address the government's continuance motion.  (Oct. 28, 2010, Notice, Docket no. 65.)

At the November 1, 2010, hearing, Mr. Edelin informed the Court that defendant was not prepared to enter into the plea agreement, was "dissatisfied" with Mr. Edelin's performance, and requested a new attorney and another suppression hearing.   (See Nov. 1, 2010, Hr'g Tr. 2–5.) The Court conducted a colloquy of defendant, who explained that he believed Mr. Edelin failed to address issues that "would have made a big difference" at the suppression hearing and that he wanted more time to consider the plea agreement.  (Id. at 6–7, 9–12.)  The Court informed defendant that it would not permit another suppression hearing and that it would not appoint a new attorney because defendant had had "two of the best attorneys who appear before [the Court]" in Ms. Henry and Mr. Edelin.  (Id. at 7, 9.)  Without ruling on the government's October 27, 2010, continuance motion, the Court scheduled a status hearing on November 22, 2010. Defendant was instructed to advise the Court whether he had decided to plead guilty or needed more time to consider doing so, or wanted the Court to schedule a new trial date, in which case the Court would address the government's continuance motion.  (Id. at 10–14.)   That ruling was set forth in an Order dated November 1, 2010, scheduling the status hearing for November 22, 2010, and deferring ruling on the government's continuance motion.  (Nov. 1, 2010, Order, Docket no. 68.)  The trial scheduled for November 1, 2010, was continued under those circumstances, but no new trial date was set at that time.

At the November 22, 2010, hearing, Mr. Edelin advised the Court that defendant did not want to sign the plea agreement and requested a new attorney.  (Nov. 22, 2010, Hr'g Tr. 3.)  The Court conducted a colloquy of defendant and then addressed Mr. Edelin and defendant outside the presence of government counsel.  One of defendant's concerns with the plea agreement was that he wanted to be able to file a habeas corpus motion challenging Mr. Edelin's effectiveness in litigating the suppression motion.  (Id. at 14.)  In response, government counsel agreed to

consider allowing defendant to file a habeas corpus motion.  (Id. at 21–22.)  Because any such motion would target Mr. Edelin, the Court permitted him to withdraw and appointed NiaLena Caravasos, Esquire, to represent defendant.  (Id.; Nov. 22, 2010, Order, Docket no. 71.)  Without ruling on the government's continuance motion, the Court then scheduled a status hearing on December 17, 2010.

By letter dated December 14, 2010, Ms. Caravasos reported that defendant needed to be examined by a forensic psychiatrist.  At the December 17, 2010, status hearing, Ms. Caravasos presented an unopposed oral Motion for Continuance of Trial—defendant's fourth continuance motion—seeking time to allow the psychiatric examination to be completed.  (Dec. 17, 2010, Order, Docket no. 78, at 1–2.)  Defendant agreed to continue the trial to May 31, 2011.  (Id.)  By agreement of the parties, the Court denied the government's October 27, 2010, continuance motion as moot.  (Id. at 2.)  The Court then granted defendant's continuance motion pursuant to 18 U.S.C. §§ 3161(h)(7)(A), (h)(7)(B)(i) and (h)(7)(B)(iv) and continued the trial to May 31, 2011.  (Id. at 1.)  Defendant agreed to the continuance.  (Id. at 3.)

The Court later granted defendant's fifth continuance motion and continued the May 31, 2011, trial date to November 14, 2011, pursuant to 18 U.S.C. §§ 3161(h)(1)(A), (h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv).  Defendant agreed to the continuance.  (May 20, 2011, Order, Docket no. 92, at 3.)

### D.    Events of October 2011 Through January 2012

The Court held a status hearing on October 17, 2011, to address concerns raised by defendant's counsel, Ms. Caravasos, in letters to the Court dated July 28, 2011, and September 13, 2011, about whether deficits in defendant's memory and comprehension precluded him from understanding the proceedings or assisting in his defense. (Oct. 17, 2011, Order, Docket no. 100,

at 3–4.)  As of the hearing, trial was still scheduled for November 14, 2011.  Prior to the hearing,

defendant's counsel provided the Court with reports dated June 16, 2011, and October 11, 2011,

from psychiatrist Robert L. Sadoff, M.D., and a report dated June 9, 2011, from psychologist

Gerald Cooke, Ph.D.  (Id. at 1.)

At the hearing on October 17, 2011, the Court ordered defendant committed to an

appropriate facility for a competency evaluation and recommended treatment pursuant to 18

U.S.C. §§ 4241(b) and 4247(b).  The Order provided that defendant was referred "for a period

not to exceed 30 days" but that the facility could request additional time by letter to the Court.

(Oct. 17, 2011, Order at 1–2.)  The Order also continued the trial until further Order of the Court

pursuant to 18 U.S.C. §§ 3161(h)(1)(A), (F), and (H).

Defendant was designated on October 26, 2011, to the Metropolitan Correctional Center

in New York ("MCC-NY") by the Federal Bureau of Prisons.  By letter dated October 28, 2011,

MCC-NY requested an extension until November 25, 2011, to file its report.  (Oct. 28, 2011,

Letter from Warden Suzanne Hastings to Court, Docket no. 105, at 1.)  The Court granted the

request by Order dated November 4, 2011.  MCC-NY's extremely thorough report, dated

November 29, 2011, was filed under seal on December 12, 2011.

The parties, through counsel, addressed matters including the Metropolitan Correctional

Center's report during a telephone conference on December 21, 2011.  That same day, Ms.

Caravasos filed a Motion for Leave to Withdraw, seeking permission to terminate her

representation due to defendant's "consistently negative feelings toward [her]" and the "obvious

breakdown of the attorney-client relationship."  (Mot. Leave Withdraw, Docket no. 112, at 1–2.)

The Court scheduled a hearing on January 20, 2012, to address both the evaluation and the

Motion for Leave to Withdraw.[4]  (Dec. 23, 2011, Order, Docket no. 114, at 1.)  At that hearing, based on the competency report and defense counsel's representations, the Court determined that defendant understood the nature and consequences of the charges against him and was able to assist in his defense.  (Jan. 20, 2012, Order Regarding Competency, Docket no. 119, at 1.)  The Court then granted Ms. Caravasos leave to withdraw, appointed Stephen J. Britt, Esquire, to represent defendant, and scheduled a status report date to facilitate the scheduling of further proceedings, including the trial.  The Court also continued the trial date until further order of the Court pursuant to 18 U.S.C. § 3161(h)(7)(A) due to the appointment of new counsel.  (Jan. 20, 2012, Order Regarding Pro Se Motions & Future Proceedings, Docket no. 121, at 1–2.)  At a status hearing on February 17, 2012, the Court scheduled further proceedings, including the presently scheduled trial date of April 23, 2012.

### E.      Speedy Trial Motion

Defendant filed his Speedy Trial Motion on February 18, 2012, contending that his speedy trial rights have been violated.  He advances two arguments in support of this contention.  First, he argues generally that his pretrial detention violates the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. §§ 3161 et seq., because he has suffered negative physical and mental effects due to his "depressive disorder, his 'considerable anxiety problems[,]' . . . [his] profound dislike of people," and "his impaired memory."  (E.g., Mem. Supp. Speedy Trial Mot. 5; see also March 13, 2012, Hr'g Tr. ("3/13/12 Tr.") at 14.)  Second, according to defendant, two of the continuances the Court granted were improper under the Speedy Trial Act.  He objects to

---

[4] Between September 2011 and January 2012, defendant filed several pro se motions.  The Court denied the pro se motions without consideration and without prejudice by Order dated January 20, 2012.  The Order provided that newly appointed counsel could refile or adopt the pro se motions if counsel deemed it appropriate.

(1) the events that took place between October and December, 2010, that allegedly resulted in the Court's granting defendant's oral motion for a continuance on December 17, 2010; and (2) the October 17, 2011, commitment for a competency evaluation, and subsequent extension.  (See 3/13/12 Tr. 14–15.)  As to the December 17, 2010, continuance, defendant avers that the Court impermissibly continued the trial at the government's request to accommodate Officer Robertson's wife giving birth.  (Id. at 20.)  As to the October 17, 2011, continuance and extension, defendant argues that the Court had no authority to continue the trial and extend the commitment to permit MCC-NY to complete the competency evaluation.  (Id. at 17–18.)

Defendant seeks dismissal of the indictment as a remedy or, in the alternative, release on bail pending trial.  (Mem. Supp. Speedy Trial Mot. 5.)

### F.      Motion to Reopen Suppression Hearing

Defendant argues that the Court should reopen the suppression hearing because "there were extant critical facts which were not briefed in the motions nor developed."  (Mot. Reopen Suppression Hr'g 5–6.)  The motion raises four points, and Mr. Britt added a fifth at oral argument.  First, defendant contends that Officer Robertson testified at defendant's preliminary hearing in state court that he was "certain" the bulge in defendant's pocket was not a weapon before he reached into the pocket.  (Id. at 7.)  Second, according to defendant, the officer also acknowledged at the preliminary hearing that he had "manipulat[ed]" or "squeeze[ed]" the bulge instead of rubbing it with an open palm.  (Id. 6–7.)  Third, Officer Robertson had "only a few months['] experience at the time of Mr. Robinson's apprehension," which defendant contends "should have been emphasized at the suppression hearing."  (Id. at 8.)  Fourth, defendant argues that the Court's opinion denying the Motion to Suppress improperly referred to "vials" of crack cocaine instead of "packages or bags."  (Id. at 11–12.)  Finally, defendant argues that Officer

-10-

Robertson's preliminary hearing testimony that he "could hear clear plastic crunching," (Prelim. Hr'g Tr., Mot. Reopen Supp. Hr'g Ex. A, at 6), must have been fabricated because it is impossible to hear the color or quality of plastic.  (3/13/12 Tr. 42–44.)

## III.   DISCUSSION—SPEEDY TRIAL MOTION

The Court addresses the three issues presented by the Speedy Trial Motion in the following order: (1) the Speedy Trial Act, (2) the Sixth Amendment right to a speedy trial, and (3) defendant's request for release on bail.

### A.   Speedy Trial Act

#### 1.   Legal Standard

"In any case in which a plea of not guilty is entered, the trial of a defendant . . . shall commence within seventy days from the filing date . . . of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1).  The Court must dismiss the indictment where a trial is delayed for more than seventy days and the cause of the delay does not fit within any exclusion specified in 18 U.S.C. § 3161(h).  See Zedner v. United States, 547 U.S. 489, 499 (2006); United States v. Lattany, 982 F.2d 866, 871 (3d Cir. 1992).  "Despite the strict time limits that the [Speedy Trial] Act places on commencing trial," an exclusion does not count towards the seventy-day limit when the exclusion fits within the "'long and detailed list of periods of delay that are excluded in computing the time within which trial must start."  United States v. Erby, 419 F. App'x 176, 179 (3d Cir. 2011) (quoting Zedner, 547 U.S. at 497).

#### 2.   Analysis

Defendant's trial was required to begin within seventy days from his initial appearance in federal court, which took place on July 28, 2009, in the absence of any exclusions.  See 18

U.S.C. § 3161(c)(1).  However, defendant's trial has been continued several times pursuant to 18 U.S.C. § 3161(h).  Because of those continuances, according to the Court's calculations, defendant's current Speedy Trial Act deadline is May 16, 2012.[5]  Defendant's trial is scheduled to begin on April 23, 2012.  Therefore, defendant's Speedy Trial Act rights have not been violated unless one or more of the continuances were improvidently granted.  The Court will first address in turn the two continuances defendant challenges.

### i.       Events of October through December 2010

Defendant argues that the Court erred in "granting" the government's October 27, 2010, Motion of United States for Continuance for Unavailability of Essential Witness.  That motion was based on Officer Robertson's need to care for his pregnant wife.  (3/13/12 Tr. 20–21.) Defendant argues that Officer Robertson's wife's giving birth does not justify a continuance under 18 U.S.C. § 3161(h)(3)(A), which excludes "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness."  Defendant's argument fails for two reasons.  First, its factual predicate is flawed; second, the time from October 27, 2010, to December 17, 2010, was properly excluded due to pending motions pursuant to 18 U.S.C. § 3161(h)(1)(D).

First, the Court never granted the government's motion.  By agreement of the parties, the Court denied the Motion of United States for Continuance for Unavailability of Essential Witness as moot on December 17, 2010.  (Dec. 17, 2010, Order, Docket no. 78, at 1–2.)  Thus, contrary to defendant's claim, Officer Robertson's potential unavailability was never grounds for a continuance.

---

[5] May 16, 2012, is a total of 1,023 days after defendant's initial appearance, of which 953 days are excludable under 18 U.S.C. § 3161(h).

Second, the exclusion of time from October 27, 2010, until December 17, 2010, was proper.  "Any period of delay resulting from other proceedings concerning the defendant, including . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excluded.  18 U.S.C. § 3161(h)(1)(D).  This "stops the Speedy Trial clock from running automatically upon the filing of a pretrial motion irrespective of whether the motion has any impact on when the trial begins."  United States v. Tinklenberg, 131 S. Ct. 2007, 2012 (2011).  Moreover, although the plain text of the statute is clear, at least two circuit courts have expressly held that "a government motion to exclude time and obtain a continuance gives rise to an excludable period of delay."  See United States v. Hemphill, 514 F.3d 1350, 1357 (D.C. Cir. 2008) (citing United States v. Richardson, 421 F.3d 17, 29 (1st Cir. 2005)) (interpreting identical prior version of statute).

From October 27, 2010, to December 17, 2010, the government's continuance motion was pending, and no hearing was scheduled.[6]  This time was properly excluded under 18 U.S.C. § 3161(h)(1)(D).  Moreover, defendant presented an oral motion for a change in counsel on November 1, 2010, which he reiterated at the November 22, 2010, status hearing; this motion remained pending until the Court granted it on December 17, 2010, and provided an additional, independent basis to exclude that period of time from October 27, 2010, to December 17, 2010, under 18 U.S.C. § 3161(h)(1)(D).

Thus, the Court properly excluded the time from October 27, 2010, until denial of the Motion of United States for Continuance for Unavailability of Essential Witness as moot on December 17, 2010.

_____

[6] Even if the Court had held a hearing, up to thirty days are excludable due to the motion being under advisement.  See 18 U.S.C. § 3161(h)(1)(H).

### ii.    Events of October 2011 through January 2012

Defendant next contends that it was improper for the Court to grant a continuance on October 17, 2011, and a subsequent extension on November 4, 2011, to permit MCC-NY to conduct a competency evaluation.  This argument presents two related issues: first, whether it was appropriate to allow approximately forty-three days for a competency examination of defendant, and second, whether that time was properly excluded from the Speedy Trial Act calculation.

On either party's motion or <u>sua sponte</u>, the Court may hold a hearing to determine defendant's competency if "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(a).  Prior to the hearing, the Court "may order that a psychiatric or psychological examination of the defendant be conducted."  <u>Id.</u> § 4241(b).  To facilitate an examination, the Court may order defendant committed for "a reasonable period . . . not to exceed thirty days" and may, on request of the director of the appropriate facility, grant a "reasonable extension . . . not to exceed fifteen days . . . upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant."  <u>Id.</u> § 4247(b).  Thus, a commitment of up to forty-five days is permissible when good cause is shown.

The Court followed this procedure exactly in this case.  Finding reasonable cause to believe that defendant may have been incompetent to stand trial, the Court ordered defendant committed "for a period not to exceed 30 days" for an evaluation.  (10/17/11 Order.)  Finding that MCC-NY's Warden's request for a full thirty-day period to conduct the evaluation after defendant's arrival constituted "good cause" under 18 U.S.C. § 4247(b), the Court extended

-14-

defendant's commitment to November 25, 2011, which was only thirty-nine days from October 17, 2011.  (Nov. 4, 2011, Order, Docket no. 106.)  Even using the date on which MCC-NY completed its report—November 29, 2011—the commitment lasted forty-three days, which is within the permissible forty-five-day period.  Thus, defendant's commitment did not violate 18 U.S.C. §§ 4241 or 4247(b).

The second issue is whether the delay from October 17, 2011, to January 20, 2011, during which MCC-NY performed its competency examination, the Court and parties received and read the report, and the Court conducted a competency hearing, was properly excludable from defendant's Speedy Trial Act deadline.  The Court concludes it was properly excludable.

First, "delay resulting from <u>any proceeding</u>, including any examinations, to determine the mental competency or physical capacity of the defendant" is excludable from the Speedy Trial Act calculation.  18 U.S.C. § 3161(h)(1)(A) (emphasis added).  The exclusion for competency proceedings is without limit and is broader than the forty-five-day limit for commitment in 18 U.S.C. § 4247(b)  <u>See</u> <u>United States v. Fuller</u>, 86 F.3d 105, 106 (7th Cir. 1996); <u>United States v. Miranda</u>, 986 F.2d 1283, 1284–85 (9th Cir. 1993) (excluding period of 106 days under 18 U.S.C. § 3161(h)(1)(A) for competency proceeding because "there is no compelling reason that the two statutes be linked"); <u>cf.</u> In re Hubbard, 226 F. App'x 109, 112 (3d Cir. 2007) ("The time during which a motion to determine competency is pending may also be excluded as is the time during which the examination itself has been delayed.").  Thus, the time period from October 17, 2011, to January 20, 2012, was properly excluded under 18 U.S.C. § 3161(h)(1)(A).

The time was also properly excluded under other provisions of the Speedy Trial Act.  Between October 17, 2011, and January 20, 2012, several motions were also pending— specifically, Ms. Caravaso's December 21, 2011, Motion for Leave to Withdraw and the <u>pro se</u>

motions defendant filed on September 28, 2011; October 13, 2011; October 17, 2011; January 18, 2012; and January 19, 2012.  The Court resolved all of those motions at the hearing on January 20, 2012.  As discussed supra, "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," does not count against the seventy-day limit in the Speedy Trial Act.  18 U.S.C. § 3161(h)(1)(D).  Moreover, 18 U.S.C. § 3161(h)(1)(F) excludes "delay resulting from transportation of any defendant . . . to and from places of examination or hospitalization, except that any time consumed in excess of ten days . . . shall be presumed to be unreasonable."  The Court complied with this provision and directed the United States Marshal for this District to transfer defendant "immediately," "no later than ten (10) days" from October 17, 2011.  (Oct. 17, 2011, Order 2.)

Thus, the time from October 17, 2011, until January 20, 2012, was properly excluded from defendant's Speedy Trial Act calculation.

### iii.    Conclusion

The Court rejects both of defendant's arguments that the Court improperly excluded time from his Speedy Trial Act calculation.[7]  Because the exclusions were proper, defendant's presently scheduled trial date of April 23, 2012, is within the statutorily required period, which will expire on May 16, 2012.  See 18 U.S.C. § 3161(c)(1).  Thus, there has been no violation of the Speedy Trial Act.

---

[7] An isolated sentence in defendant's Speedy Trial Motion argues that he was not competent to waive his Speedy Trial Act rights.  (Speedy Trial Mot. 2.)  Counsel did not address this argument in the Memorandum in Support of the Speedy Trial Motion or at oral argument.  The Court considered extensive and thorough documentation of defendant's competency before finding defendant competent on January 20, 2012.  The Court rejects defendant's argument that he was not competent to waive his Speedy Trial Act rights.

### B.      Sixth Amendment Right to Speedy Trial

#### 1.      Legal Standard

In Barker v. Wingo, the Supreme Court identified four factors courts must consider in determining whether a trial delay infringes the Sixth Amendment right to a speedy trial: (1) the length of the delay; (2) the validity of the reasons for the delay; (3) whether the defendant affirmatively asserted his right; and (4) whether the defendant was prejudiced by the delay.  407 U.S. 514, 530–532 (1972); see also United States v. Gutierrez, 351 F. App'x 697, 699 (3d Cir. 2009) ("[T]he key interests that the Sixth Amendment is designed to protect [are] '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" (quoting Barker, 407 U.S. at 532)).

#### 2.      Analysis

The Court addresses each of the Barker factors in turn.  "None of these factors is 'either a necessary or sufficient condition,' and the factors 'must be considered together with such other circumstances as may be relevant.'"  Battis, 589 F.3d at 678 (quoting Barker, 407 U.S. at 533).

#### i.      Length of Delay

The first factor, the length of the delay, involves two inquiries.  The first is whether the delay is "presumptively prejudicial" because it has passed "'the point at which courts deem the delay unreasonable enough to trigger the Barker inquiry.'"  Hakeem v. Beyer, 990 F.2d 750, 759 (3d Cir. 1993) (quoting Doggett v. United States, 505 U.S. 647, 650 (1992)).  Courts generally consider a delay to be "presumptively prejudicial" when more than one year elapses between indictment and trial.  See Doggett, 505 U.S. at 652 n.1; cf. Hakeem, 990 F.2d at 760 (surveying cases and holding that delay of fourteen-and-a-half months establishes prejudice).  Once a defendant has shown presumptive prejudice, the Court considers the length of the delay along

with the other <u>Barker</u> factors.  As it gets longer, it "incrementally add[s] its weight to any actual harm that the record shows the defendant suffered as a result of the delay in question."  <u>Hakeem</u>, 990 F.2d at 760.

Slightly more than thirty-three months will have elapsed between the issuance defendant's federal Indictment on July 15, 2009, and presently scheduled trial date, April 23, 2012.[8]  This time period is sufficiently lengthy to create a presumption of prejudice.  <u>See</u> <u>Doggett</u>, 505 U.S. at 650.  Thus, the Court will consider the rest of the <u>Barker</u> factors, weighing the thirty-three-month delay in the context of "any actual harm that the record shows the defendant suffered."  <u>See</u> <u>Hakeem</u>, 990 F.2d at 760.

### ii.     Validity of Reason for Delay

<u>Barker</u> distinguished between three types of delays: delays caused by the government, neutral delays, and delays caused by the defendant.  <u>United States v. Battis</u>, 589 F.3d 673, 680 (3d Cir. 2009) (quoting <u>Barker</u>, 407 U.S. at 531); <u>see also</u> <u>United States v. Dent</u>, 149 F.3d 180, 184–85 (3d Cir. 1998).  In all of these categories, the government "bears the burden to justify the delay."  <u>Hakeem</u>, 990 F.2d at 770.  Courts weigh delays as follows:

> A deliberate effort by the Government to delay the trial "in order to hamper the defense" weighs heavily against the Government." <u>Barker</u>, 407 U.S. at 531.  A "more neutral reason such as negligence or overcrowded courts" also weighs against the Government, though "less heavily."  <u>Id.</u>  This is because . . . it is the Government's duty to bring a defendant to trial.  <u>Id.</u> at 527, 531.  Finally, "a valid reason, such as a missing witness, should serve to justify appropriate delay."  <u>Id.</u> at 531.  By contrast, "delay caused by the defense weighs against the defendant," including "delay caused by the defendant's counsel."  <u>Vermont v. Brillon</u>, __ U.S. __, 129 S.Ct. 1283, 1290–91 (2009).

---

[8] "When an arrest on state charges is followed by a federal indictment, the right to a speedy trial in the federal case is triggered by the federal indictment, and the time period under consideration commences on that date."  <u>Battis</u>, 589 F.3d at 679.

Battis, 589 F.3d at 679–80.

All of the delay in this case is attributable either to defendant or to neutral factors, and thus this factor weighs heavily in the government's favor.  See Battis, 589 F.3d at 680. Defendant's trial has been continued seven times.  The Court has allowed defendant to change counsel three times.  Six times the Court granted continuances on defendant's oral or written motion to allow additional trial preparation or continued plea discussions or to permit new counsel to acquaint himself or herself with the case.  In addition to these continuances, the proceedings have otherwise been slowed by issues raised by defendant, including the filing of numerous pretrial motions requiring hearings. The only continuance not directly chargeable to defendant is the October 17, 2011 continuance to permit a competency evaluation.[9]  As discussed supra, the government has only once sought a continuance, and that motion was denied as moot.

### iii.    Defendant's Assertion of Right

"[A] defendant's claim that the right is being violated provides strong evidence that it actually was violated."  Battis, 589 F.3d at 681.  A defendant represented by counsel should file a motion or instruct counsel "'to assert the [speedy-trial] right at a time when formal assertion would have some chance of success.'"  Id. (quoting Hakeem, 990 F.2d at 766).  However, "when a defendant requests a speedy trial, but 'through contrary actions . . . evidences an unwillingness to commence with the trial requested, [the] request carries minimal weight.'"  Id. (quoting Hakeem, 990 F.2d at 765).

---

[9] The Court based its decision to order a competency evaluation in part on letters from defendant's prior counsel.  However, the Court's decision was also based on letters from Doctors Sadoff and Cooke, so this continuance is not entirely attributable to defendant.

Defendant has asserted his speedy trial rights on several occasions, both counseled and pro se. On February 28, 2012, defendant's counsel filed the motion presently before the Court. However, this factor does not favor defendant because, even concurrently with his speedy trial motion, defendant has insisted on litigating—and relitigating—pretrial motions that will take time to resolve.[10] In addition to the Motion to Reopen Suppression Hearing addressed infra, a Motion to Dismiss Indictment based on alleged destruction of evidence is presently pending before the Court. When, "through contrary actions . . . [a defendant] evidences an unwillingness to commence with the trial requested," his speedy trial request "carries minimal weight." Hakeem, 990 F.2d at 765.

### iv.    Prejudice to Defendant

A defendant may make either a specific or a general showing of prejudice. Id. at 682. A specific showing involves one of the three interests protected by the speedy trial right: oppressive pretrial incarceration, anxiety or concern, or impairment of the defense. See Barker, 407 U.S. at 532. However, "'consideration of prejudice is not limited to the specifically demonstrable,'" and thus a defendant may "claim prejudice without providing 'affirmative proof of particularized prejudice.'" Battis, 589 F.3d at 682 (quoting Doggett, 505 U.S. at 655–56). To counter such a claim, the government may show that "'defendant acquiesced in the delay'" or that "'the delay left [the defendant's] ability to defend himself unimpaired.'" Id. (quoting Doggett, 505 U.S. at 658 & n.1) (modification in original).

---

[10] The numerous pretrial motions were not diversionary tactics masterminded by defendant's attorneys. Defendant has filed numerous pro se motions that his attorneys have adopted at his insistence. (See, e.g., 3/13/12 Tr. 6 ("Mr. Britt: Your Honor, my client tells me that he will not waive whatever protection [the motion under California v. Trombetta, 467 U.S. 479 (1984)] would give him and the default position is that he's going to have to accept a continuance if the Court orders.").)

This factor favors defendant slightly.  He relies on the "oppressive pretrial incarceration" and "anxiety or concern" prongs of the <u>Barker</u> paradigm.  (Mem. Supp. Speedy Trial Mot. 6.) Defendant's motion is based specifically on "the subjective effect that the ordinary conditions [at the Federal Detention Center]" have had on him.  (<u>Id.</u> at 5.)  He alleges that confinement has caused him extraordinary mental disruption due to his "depressive disorder, his considerable anxiety problems, and profound dislike of people, coupled with his impaired memory."  (<u>Id.</u> (quotation marks omitted).)

"Vague allegations of anxiety are insufficient" to show prejudice; instead, a defendant "must produce evidence of psychic injury" and "show that his anxiety extended beyond that which 'is inevitable in a criminal case.'"  <u>Hakeem</u>, 990 F.2d at 762 (quoting <u>United States v. Dreyer</u>, 533 F.2d 112, 115–16 (3d Cir. 1976)).  The Court has reviewed several evaluations of defendant's mental condition, including MCC-NY's exhaustive report.  The medical evidence provides some support for defendant's assertion that he is uniquely sensitive to the anxieties of pretrial detention.  However, defendant's evidence does not show the "unacceptable degree of damage" given significant emphasis by the Third Circuit in <u>Dreyer</u>.  In that case, the defendant "experienced severe mental disturbance" after her arrest, "was in intensive therapy for acute anxiety and depression," and attempted suicide.  533 F.3d at 116.  Defendant's symptoms are far less severe.  Accordingly, the Court concludes that defendant's "evidence of anxiety" does not "in and of itself . . . support relief under <u>Barker</u> . . . [but] it does function to tip the scale slightly in [his favor]" on this issue.  <u>Burkett v. Fulcomer</u>, 951 F.2d 1431, 1445 (3d Cir. 1991).

### v.    Conclusion

Weighing all of the factors discussed above, the Court concludes that defendant's Sixth Amendment speedy trial right has not been violated.  <u>See</u> <u>Barker</u>, 407 U.S. at 536.  The thirty-

three month delay between the issuance of the Indictment and the scheduled trial date, as well as evidence of defendant's susceptibility to anxiety, weigh slightly in defendant's favor. However, the pretrial delay is almost entirely attributable to defendant, who has sought numerous continuances and pursued several pretrial motions. Because the delay is largely attributable to defendant, his assertion of his speedy trial right deserves no significant weight. "[D]efendants cannot have their cake and eat it too. . . . As the court gives careful attention to each matter raised by the defendant[], the very same defendant[] may not now cry foul that the case is taking too long." United States v. Franco, 112 F. Supp. 2d 204, 215 (D.P.R. 2000).

### C.     Defendant's Motion for Release on Conditions

#### 1.     Legal Standard

The Bail Reform Act, 18 U.S.C. § 3141 et seq., provides for pretrial detention only where a defendant poses a risk of flight or a danger to the community. Where "there is probable cause to believe that [a defendant] committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.)," "[s]ubject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). The presumption of § 3142(e) shifts to a defendant only the burden of producing evidence that he is neither a danger nor a flight risk; the burden of persuading the Court that a defendant is dangerous or will not appear for trial remains with the government. Id. To rebut the presumption of detention, a defendant "must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." United States v. Carbone, 793 F.2d 559, 560 (3d Cir. 1986) (emphasis added). Evidence relating to character, family ties, employment, and length of

residence in the community may rebut the presumption that a defendant poses a danger to the community.  Id. at 561.  To meet its burden of persuasion, the government must prove either by clear and convincing evidence that a defendant is a danger to the community or by a preponderance of the evidence that he poses a risk of flight if released pending trial.  United States v. Himler, 797 F.2d 156, 160–61 (3d Cir. 1986).

      **2.**      **Analysis**

The Superseding Indictment charges defendant with violating a provision of the Controlled Substances Act, 21 U.S.C. § 841(a)(1), by possessing with intent to distribute twenty-eight grams or more of crack cocaine.  Because of defendant's two prior felony controlled substances convictions, he faces a mandatory minimum ten-year term of imprisonment and a maximum term of life imprisonment if convicted.  See 21 U.S.C. § 841(b)(1)(B).  The rebuttable presumption of § 3142(e)(3)(A) thus applies as long as the Court finds probable cause to believe that defendant committed the offense with which he is charged in the Superseding Indictment.  An indictment is "sufficient to support a finding of probable cause triggering the rebuttable presumption . . . under § 3142(e)."  United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).  Based on the Superseding Indictment, the Court concludes that there is probable cause to believe that defendant committed the offense for which he is charged in the Superseding Indictment.

Defendant did not introduce any evidence in support of his request to be released on bail pending trial.  He argued only that the Court should "consider some form of very restrictive release," such as electronic monitoring or home confinement.  (3/13/12 Tr. 22–23.)  The government opposes defendant's request because he faces a significant period of incarceration and because the government's evidence of defendant's guilt, as presented at the suppression hearing, is strong.  (Id. at 23–24.)

Defendant has not introduced any evidence in support of his request for release, so he has not rebutted the presumption of detention of 18 U.S.C. § 3142(e)(3)(A).  Even if he had, the government has introduced strong evidence of defendant's involvement in a controlled substance offense.  Thus, the government has met its burden of proving by clear and convincing evidence that defendant is a danger to the community and by a preponderance of the evidence that he poses a risk of flight if released pending trial.  See Himler, 797 F.2d at 160–61.  Defendant's request for release pending trial is therefore denied.

### D.      Conclusion

There has been no violation of defendant's rights under the Speedy Trial Act or the Sixth Amendment right to a speedy trial.  Furthermore, defendant is not entitled to release on bail pending trial.  The Court therefore denies defendant's Speedy Trial Motion.

## IV.      ANALYSIS—MOTION TO REOPEN SUPPRESSION HEARING

### A.      Legal Standard

The decision to reopen a hearing is within the Court's discretion.  United States v. Kithcart, 218 F.3d 213, 219–20 (3d Cir. 2000).  The "primary focus" is on "whether the party opposing reopening would be prejudiced if reopening is permitted."  Id. (citations omitted). "The party moving to reopen should provide a reasonable explanation for failure to present the evidence [initially]."  Id. (citations omitted; modification in original).

Factors the Court may consider in determining whether reopening is justified include:

> [T]he timeliness of the motion, the character of the testimony, and the effect of the granting of the motion. . . . The evidence proffered should be relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused.  The belated receipt of such testimony should not imbue the evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered.

United States v. Coward, 296 F.3d 176, 181 (3d Cir. 2002) (quoting United States v. Blankenship, 775 F.2d 735, 741 (6th Cir. 1985)).

**B.    Analysis**

Defendant seeks to reopen the suppression hearing to provide additional argument and evidence regarding certain issues addressed at the suppression hearing and in the Court's October 22, 2010, Memorandum.  The only additional evidence defendant seeks to introduce is the testimony Officer Robertson gave at defendant's preliminary hearing in state court, which was attached as an exhibit to the Motion to Reopen Suppression Hearing.  Defendant contends that reopening the suppression hearing is justified because "extant critical facts . . . were not briefed in the motions nor developed at the suppression hearing [by defendant's prior counsel, Mr. Edelin]."  (Mot. Reopen Suppression Hr'g 5–6.)

The Court concludes that it is appropriate to reopen the suppression hearing in this case for the limited purpose of the presentation of additional argument and consideration of the preliminary hearing transcript.  Doing so will not prejudice the government, which took the position that "at the time of the suppression hearing the officer's testimony was not different or inconsistent with what he said at the preliminary hearing." (3/13/12 Tr. 41.)  Moreover, defendant has offered a "reasonable explanation" for his failure to present the arguments and evidence in the first instance.  See Kithcart, 218 F.3d at 219–20.

Having considered defendant's Motion to Reopen Suppression Hearing and the preliminary hearing transcript, as well as the arguments counsel presented at the March 13, 2012, hearing, the Court addresses each of defendant's five arguments in turn.

Defendant argues first that Officer Robertson testified during the preliminary hearing that he was "certain" the bulge in defendant's pocket was not a weapon before he reached into

defendant's pocket.[11]  Defendant challenges the Court's conclusion that, under Minnesota v.

Dickerson, 508 U.S. 366 (1993), and United States v. Yamba, 506 F.3d 251 (3d Cir. 2007),

"probable cause to believe the objects were narcotics existed prior to the point at which Officer

Robertson ruled out the possibility that the objects were a weapon or that they concealed one."

Robinson, 2010 WL 4181736, at *7.

Defendant misreads the officer's testimony and overstates its probative value.  "If a

police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or

mass makes its identity immediately apparent," there has been no Fourth Amendment violation.

Dickerson, 508 U.S. at 375.  Taken as a whole, Officer Robertson's testimony establishes that it

was immediately apparent to the officer upon patting the bulge in defendant's pocket that the

pocket contained a large quantity of crack cocaine in knotted sandwich baggies.  This established

probable cause for Officer Robertson to reach into the pocket to seize the crack cocaine.  Id. at

376 ("The seizure of an item whose identity is already known occasions no further invasion of

privacy.").  The portion of preliminary hearing testimony on which defendant relies is consistent

with the rest of Officer Robertson's testimony, (see Supp. Hr'g Tr. 20 ("I wanted to make sure

that he didn't have any weapons on it, maybe he was hiding or he had it in his pocket underneath

the narcotics . . . ."), which merely proves that determining the composition of the bulge did not

dispel Officer Robertson's fear that the pocket might also contain a weapon.  Being unsure

whether the pocket contained a weapon in addition to narcotics does not undercut the probable

cause that already existed as to the crack cocaine.  Accordingly, defendant's first argument is

rejected.

---

[11] The full question and answer were: "Q. You were certain at that time that was not a weapon
that you were feeling? A. Correct."  (Prelim. Hr'g Tr. 11–12.)

Second, defendant contends that, at the preliminary hearing, Officer Robertson acknowledged manipulating the bulge beyond what is permissible under the plain feel doctrine as set forth in <u>Dickerson</u> and <u>Yamba</u>.  Defendant relies on the officer's preliminary hearing testimony that he "could feel the sandwich baggies were tied" and "could feel the knots in the pocket."  (Mot. Reopen Supp. Hr'g 6 (quoting Prelim. Hr'g Tr. 11).)  Again, defendant overstates the significance of these isolated quotations.   Based on all the evidence, including the size of the bulge and the large number of packets of crack cocaine that defendant had in his pocket, the Court concluded that there was "no testimony of extensive manipulation of the objects seized," <u>Robinson</u>, 2010 WL 4181736, at *6.  Defendant's argument does not cast doubt on the Court's conclusion.  <u>See Yamba</u>, 506 F.3d at 260 ("[The officer] is allowed to slide or manipulate an object in a suspect's pocket, consistent with a routine frisk, until the officer is able reasonably to eliminate the possibility that the object is a weapon.").

Defendant's third argument is that Officer Robertson's minimal experience as a police officer casts doubt on the credibility of the officer's testimony and did not receive sufficient emphasis at the suppression hearing.  This argument is likewise rejected.  Evidence as to the officer's employment history was introduced at the suppression hearing, (Supp. Hr'g Tr. 4–5, 20), and the Court took that evidence into account as one factor among many in determining that Officer Robertson's testimony was "credible," <u>Robinson</u>, 2010 WL 4181736, at *7.

Fourth, defendant points out that the Court's October 22, 2010, Memorandum referred to "vials" as having been retrieved from defendant's pocket instead of "bags," "packages," or "packets."  The Court and government agreed, (3/13/12 Tr. 33–34), that the references in the Memorandum to "vials" were a mistake and did not reflect the evidence adduced at the suppression hearing, which established that Officer Robertson recovered numerous small plastic

bags from defendant's pocket, (Photo, Gov't Ex. 2), which the parties referred to during

argument as "packets," (e.g., Supp. Hr'g Tr. 50). The Court will amend its prior Memorandum to

correct the error and substitute the word "packets" for the word "vials."

Finally, defendant contends that Officer Robertson's preliminary hearing testimony, in

which he stated that he "could hear clear plastic crunching," demonstrates that the officer's

suppression hearing testimony was either not credible or fabricated because it is impossible to

hear "clear" plastic.  However, Officer Robertson testified at the suppression hearing that he "felt

a hard, rocky substance" and "could hear plastic where there was function to move around under

[his] hand."  (Supp. Hr'g Tr. 19.)  At a different point during the preliminary hearing, the officer

referred only to "plastic" without qualification.  (Prelim. Hr'g Tr. 11.)  Considered in the totality

of the evidence, the Court agrees with the government that the "primary substance" of the

officer's testimony was that he could hear "plastic" and concludes that the reference to "clear

plastic" was an insignificant mistake.[12]  (3/13/12 Tr. 45.)

Accordingly, the Court reaffirms its prior decision that no Fourth Amendment violation

occurred in the arrest of defendant on February 22, 2009.

### C.  Conclusion

The Court grants defendant's Motion to Reopen Suppression Hearing for the limited

purpose of receiving Officer Robertson's preliminary hearing testimony and the presentation of

additional argument.  However, apart from the mistaken references to "vials" instead of

"packets" in the Memorandum dated October 22, 2010, the Court concludes that it properly

---

[12] Moreover, this point was briefed before the suppression hearing.  Mr. Edelin's supplemental
motion addressed the clear-plastic issue: "The first issue raised by this testimony is how the
officer could hear 'clear' plastic.  Clear plastic does not 'crunch' any differently than colored
plastic."  (Def.'s Supp. Mem. 3.)

found no Fourth Amendment violation during the arrest of defendant on February 22, 2009. Thus, defendant's Motion to Reopen Suppression Hearing is denied in all other respects, and the Court reaffirms its October 22, 2010, Memorandum and Order as amplified by this Memorandum.

## V.        CONCLUSION

There has been no violation of defendant's right to a speedy trial as guaranteed by the Sixth Amendment and the Speedy Trial Act, and defendant has not rebutted the presumption that he be detained pending trial.  The Court therefore denies defendant's Speedy Trial Motion. While the Court grants defendant's Motion to Reopen Suppression Hearing to permit additional argument and the introduction of one piece of evidence, the Court reaffirms its Memorandum and Order dated October 22, 2010, as amplified in this Memorandum, with the exception of the erroneous references to "vials" instead of "packets."  Defendant's Motion to Reopen Suppression Hearing is thus denied in all other respects.

An appropriate Order follows.