IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| **JAMES ROBINSON** | : | NO. 09-473 |
| | : | |

**DuBOIS, J.**                                                                                        April 13, 2012

# M E M O R A N D U M

## I.   INTRODUCTION

Defendant James Robinson is charged by Superseding Indictment with possession with intent to distribute cocaine base ("crack") (referred to as "crack cocaine"). Presently before the Court is defendant's Motion to Dismiss Indictment ("Trombetta Motion"[1]), in which he argues that the government improperly destroyed the recording of the 911 call that led to his arrest. Following a hearing on April 11, 2012, the Court issued an oral Order denying defendant's motion. This Memorandum amplifies the bases for the Court's oral Order denying defendant's Trombetta Motion.

## II.   BACKGROUND

A detailed factual and procedural history of this case is set forth in the Court's prior opinions. See United States v. Robinson, Cr. no. 09-473, 2012 WL 987396 (E.D. Pa. Mar. 23, 2012) (denying motion to dismiss on speedy trial grounds and affirming and amending opinion denying motion to suppress); United States v. Robinson, No. 09-cr-473, 2010 WL 4181736 (E.D.

---

[1] California v. Trombetta, 467 U.S. 479 (1984).

Pa. Oct. 25, 2010) (denying motion to suppress). This Memorandum recounts only the facts essential to resolving defendant's Trombetta motion.

Based on the evidence presented at the October 8, 2010, hearing on the Motion to Suppress, the Court summarized the events leading to defendant's arrest as follows:

> At approximately 1:45 p.m. on February 22, 2009, Officer James Robertson of the Philadelphia Police Department received a radio call based on an anonymous 911 call reporting an assault of a pregnant female by a light-complexioned black male wearing a tan shirt and blue pants at the intersection of 27th Street and Cecil B. Moore Avenue in North Philadelphia. Officer Robertson drove his patrol car to the intersection, arriving approximately thirty seconds after receiving the radio call. As he approached the intersection, Officer Robertson observed the defendant standing at the southwest corner of the intersection dressed in a tan shirt and blue pants. He did not observe a pregnant woman in the vicinity.

Robinson, 2010 WL 4181736, at *1 (transcript citations omitted). Officer Robertson approached defendant and identified himself, observing that defendant was "sweating despite being dressed lightly for the cold weather." Id. After defendant "refused to provide the officer with his name and stated that he did not have any identification," Officer Robertson patted defendant down to check him for weapons. Id. During the pat-down, Officer Robertson felt a bulge that he believed to be packets of narcotics. Id. He then recovered packets containing crack cocaine from defendant's left front pocket. Id. The Court concluded that the seizure of the crack cocaine was lawful, see Robinson, 2010 WL 4181736, and reaffirmed that conclusion in its Memorandum and Order dated March 23, 2012, see Robinson, 2012 WL 987396.

The recording of the anonymous 911 call is the subject of defendant's Trombetta motion. The government concedes that the recording was destroyed thirty days after the call, but it argues that the destruction was pursuant to standard practice and that defendant has been provided with a Computer-Aided Dispatch report ("CAD Report") containing information about the call and

the police response. (Gov't's Resp. Def.'s Mot. Dismiss Indictment ("Gov't Resp.") 2.) Defendant avers that the recording of the anonymous 911 call "may have been exculpatory or otherwise valuable to his defense" and that its destruction violated his due process rights. (Trombetta Mot. 2.) He also asserts that the CAD Report did not accurately reflect the contents of the call. (See, e.g., April 11, 2012, Hr'g Tr. ("4/11/12 Tr.") 3 (argument that the substance of the 911 call "may in fact not be what the Policeman said it was")[2].) Defendant requested that the Court hold a hearing "to determine the reason for the destruction of the recording," (Mem. Supp. Trombetta Mot. 4), and the government did not oppose this request (Gov't Resp. 1).

     The Court held a hearing on the Trombetta Motion on April 11, 2012. The government presented the testimony of Carmen Soriano, a dispatcher who had worked with the Philadelphia Police Department ("Department") for twenty-two years. (4/11/12 Tr. 13.) Ms. Soriano testified that she had experience answering 911 calls, and her primary responsibility at the time of the hearing was preparing audio recordings in response to requests. (Id. at 13, 17.)

     According to Ms. Soriano's testimony, the Department organizes 911 calls and the related records by "incident." (Id. at 14.) Each incident is assigned an identification number. (Id. at 33.) When the Department receives a 911 call, the general procedure is that the dispatcher who answers the call takes information from the caller and types that information into a computer. (Id. at 14–15, 15–17, 38.) The computer entries are made simultaneously with the call. (Id. at 37.) The computer relays the information to a "divisional console" at which a different operator is stationed. (Id. at 14–15.) The divisional consoles to which the information

---

[2] Officer Robertson's testimony at the suppression hearing was: "I received information through police radio for a male beating a pregnant female on the highway. The description given for this male as a tan shirt and blue pants. . . . It was a black male wearing a tan shirt and blue pants beating a pregnant female on the highway." (Oct. 8, 2010, Hr'g Tr. 6.)

is relayed correspond to the division in which the incident is occurring—for example, the Department's North-Central Division is comprised of two subunits, Districts Twenty-Two and Twenty-Three  (Id. at 18.)  The operator at the divisional console relays the information to police officers assigned to those districts, who respond based on their availability.  (Id. at 41–42.)  The divisional operator then makes further computer entries regarding the incident based on the officers' response, such as which police cars respond.  (Id. at 31–32.)  The computer entries made regarding a specific incident are all linked to that incident number, and they all record the time at which they were made and which operator made them.  (Id. at 33–34, 40.)

Pursuant to Department's Police Radio Directive ("Directive Number Six"), which is dated March 12, 2004, and has been in effect at all times relevant to this case, the Department retains recordings of 911 calls for a thirty-day period and destroys them thereafter.  (Id. at 23–31; Phila. Police Dep't Directive 6, Gov't Exs. 2 & 2A, at 11–12.)  During that thirty-day period, the government or a defense attorney can request a copy of the recording.  (4/11/12 Tr. 24.)  Also pursuant to Directive Number Six, the Department retains the computer data from which a CAD report can be prepared for approximately five years.  (4/11/12 Tr. 25–26; Phila. Police Dep't Directive 6 at 11–12.)  CAD reports are not prepared until a request is made.  (4/11/12 Tr. at 34.)  When a CAD report is requested, the computer prepares the report by aggregating all of the entries related to a specific incident number.  (Id. at 33–34.)

The recording of the 911 call in this case is presently unavailable.  Ms. Soriano testified that the Department logs all requests for recordings of 911 calls, regardless of whether they are filed before or after the thirty-day retention period.  (Id. at 25.)  There were no requests for a copy of the recording within the thirty-day retention period, (id. at 24–25), and the recording was presumably destroyed after expiration of that period.  Ms. Soriano further stated that she had

searched the Department's records and determined that no one ever requested the audio recording for the February 22, 2009, incident involving defendant. (Id. at 24–25.)

Ms. Soriano also explained the entries on the CAD Report in this case, which has incident number 0923008395. (CAD Report, Gov't Ex. 1, at 1.) The 911 call was received at 1:45:19 P.M. on February 22, 2009. (4/11/12 Tr. 16–17.) In the "Remarks" section, the CAD Report states: "ON CBM . . . BM LT COMPLEX . . TAN SHRT . . BLU JNS . . . ASSAULTING PREG FEM." (CAD Report 1.) According to Ms. Soriano, this means that the 911 caller informed the dispatcher that: "on Cecil B. Moore [Avenue], a black male light-complected with a tan shirt and blue jeans, was assaulting a pregnant female." (4/11/12 Tr. 18.) Ms. Soriano further explained that the entries under "Event Chronology" beginning with "DE" refer to "Dispatched, En Route" and correspond to the police cars and officers responding to the incident. (Id. at 19, 21.) There is an entry for patrol car 238 that contains Officer Robertson's name. (CAD Report 1.) Another "Event Chronology" entry, time-stamped 13:48:42, reflects that patrol cars 238 and 239 have "A ML STOPPED," which means "[o]ne male stopped." (4/11/12 Tr. 19.) An entry at 1:54:23 P.M. reflects that the incident was "cleared" by an arrest. (Id. at 23.)

### III. DISCUSSION

#### A. Legal Standard

The Due Process Clause protects defendants against the government's failure to preserve evidence, but a due process violation only occurs if the government acted in bad faith. Arizona v. Youngblood, 488 U.S. 51, 58 (1988); United States v. Ramos, 27 F.3d 65, 69 (3d Cir. 1994); see also California v. Trombetta, 467 U.S. 479, 491 (1984). A defendant has the burden "to show the prosecution's bad faith in ordering or permitting" the destruction of evidence. United

States v. Deaner, 1 F.3d 192, 200 (3d Cir. 1993). "[U]nder Youngblood and Trombetta, a defendant must show that the government: '(1) acted in bad faith when it destroyed the evidence, which (2) possessed an apparent exculpatory value and, which (3) is to some extent irreplaceable.'" United States v. Jackman, 72 F. App'x 862, 866 (3d Cir. 2003) (quoting United States v. Femia, 9 F.3d 990, 993–94 (1st Cir. 1993)); see also Trombetta, 467 U.S. at 488–89 (holding that the Due Process Clause is only violated when (1) there is "official animus . . . [or] a conscious effort to suppress exculpatory evidence," (2) the evidence "possess[es] an exculpatory value that was apparent before the evidence was destroyed," and (3) the evidence is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means").

A defendant may establish bad faith by showing that the government knew the exculpatory value of evidence at the time the evidence was lost or destroyed. Yarris v. Cnty. of Del., 465 F.3d 129, 142 (3d Cir. 2006). However, "destruction of evidence in accordance with an established procedure precludes a finding of bad faith absent other compelling evidence." Deaner, 1 F.3d at 200 (citing, inter alia, Griffin v. Spratt, 969 F.2d 16, 21 (3d Cir. 1992)). Moreover, "[w]hile a showing that the government did not follow standard procedure could provide some evidence of bad faith," the Third Circuit "[has] not held that an improper procedure in and of itself implies bad faith." Id.

### B. Analysis

Defendant has not shown any of the three elements required to establish a due process violation. First, the government's evidence overwhelmingly refutes defendant's claim that the destruction of the recording may have been in bad faith. The government showed through the testimony of Ms. Soriano and through the Department's written policy directive that the

Department's policy is to destroy audio tapes after thirty days absent a request for the recording. Although there was no evidence as to the exact date on which the recording was destroyed, Ms. Soriano's testimony that no one ever requested the recording of this 911 call establishes the unrebutted inference that the recording was destroyed after thirty days according to the Department's established policy.  See Deaner, 1 F.3d at 300.  Moreover, although the government's knowledge of the exculpatory value of evidence can support a finding of bad faith, see Yarris, 465 F.3d at 142, defendant has done nothing more than speculate, contrary to the CAD report and to Officer Robertson's testimony at the suppression hearing, that the tape contained exculpatory evidence.  See Youngblood, 488 U.S. at 58 ("[R]equiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to . . . cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.").

  The second prong of the Trombetta inquiry addresses the "apparent exculpatory value" of the evidence.  See Jackman, 72 F. App'x at 866.  Defendant's mere suspicion that the recording's contents may have contradicted the contents of the CAD Report and Officer Robertson's testimony is insufficient.  See United States v. Taylor, 379 F. App'x 240, 344 (3d Cir. 2010) (rejecting destruction-of-evidence argument where the exculpatory nature of the evidence was "dubious at best").  This is especially true given that the offense allegedly reported during the 911 call, an assault on a pregnant woman, bears no relationship to the single count of the Superseding Indictment, possession with intent to distribute crack cocaine.  Moreover, the Court rejects defendant's claim that the Due Process Clause was violated when the recording was destroyed because it is impossible to "know whether the voice recording was exculpatory, or

merely useful to the defense." (Mem. Supp. Trombetta Mot. 3.) The Supreme Court specifically took the unavailability of the requested evidence into account in Trombetta, where it fashioned the rule that this Court applies today. See 467 U.S. at 486 (acknowledging "the difficulty of developing rules to deal with evidence destroyed through prosecutorial neglect or oversight," including "the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed").

Finally, defendant has not shown the CAD Report to be an unacceptable replacement for the deleted 911 recording. See Trombetta, 467 U.S. at 488–89 (holding that the lost evidence must be "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means"). It cannot be said that the 911 recording is "to some extent irreplaceable." Jackman, 72 F. App'x at 866. Defendant's attorneys received copies of the CAD Report on August 4, 2009, and September 6, 2011. Ms. Soriano's testimony confirmed that the CAD Report is replete with information, including the essence of the anonymous caller's report: that a black man of light complexion wearing blue jeans and a tan shirt was assaulting a pregnant woman on Cecil B. Moore Avenue. Other than his speculative claim that the recording might say something different, defendant has not shown that the CAD Report is unacceptable as a substitute for the recording itself. See Taylor, 379 F. App'x at 244 (denying Trombetta motion as to unavailable videotape where government had previously disclosed existence of videotape and its contents to defendants).

"[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Youngblood, 488 U.S. at 58. Defendant has not shown that the recording was destroyed in bad faith, and he has done no more than speculate as to how it may have been useful. The Court thus

concludes that defendant's inability to access the audio recording of the 911 call does not deny him due process of law.

## IV.     CONCLUSION

Defendant has not shown that the audio recording of the 911 call was destroyed in bad faith, that it would have been exculpatory, or that the CAD Report is not an adequate substitute. Accordingly, the Court denies defendant's Trombetta Motion.

An appropriate Order follows.