**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| _____ : | | |
| **UNITED STATES OF AMERICA** : | **CRIMINAL ACTION** | |
| : | | |
| **v.** : | | |
| : | | |
| **JAMES ROBINSON** : | **NO. 09-473** | |
| _____ : | | |

**DuBOIS, J.**                                                                          **May 14, 2012**

<u>M E M O R A N D U M</u>

**I.      INTRODUCTION**

        Defendant James Robinson was charged by Superseding Indictment with possession with
intent to distribute cocaine base ("crack") (referred to as "crack cocaine").  After a four-day trial,
a jury convicted defendant on the sole count of the Superseding Indictment.  Presently before the
Court is defendant's Motion for New Trial.  For the reasons set forth below, the Court denies
defendant's motion.

**II.      BACKGROUND**

        A detailed factual and procedural history of this case is set forth in the Court's prior
opinions.  <u>See</u> <u>United States v. Robinson</u>, __ F. Supp. 2d __, Cr. No. 09-473, 2012 WL 1243831
(E.D. Pa. Apr. 13, 2012) (denying <u>Trombetta</u> motion); <u>United States v. Robinson</u>, Cr. no. 09-473,
2012 WL 987396 (E.D. Pa. Mar. 23, 2012) (denying motion to dismiss on speedy trial grounds
and affirming and amending opinion denying motion to suppress); <u>United States v. Robinson</u>, Cr.
no. 09-473, 2010 WL 4181736 (E.D. Pa. Oct. 25, 2010) (denying motion to suppress). This
Memorandum recounts only the facts essential to resolving defendant's Motion for New Trial.

        The Superseding Indictment charged defendant with one count: knowingly and
intentionally possessing with intent to distribute twenty-eight grams or more, that is, fifty-five

grams, of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii).  Defendant's trial

took place from April 23, 2012, to April 26, 2012.  The government called five witnesses:

Officer James Robertson, Officer Timothy Bogan, Sergeant Bruce Allen, Chemical Analyst Amy

Richardson, and Special Agent Randy Updegraff.  Defendant did not call any witnesses or offer

any evidence.  The jury returned a verdict of guilty on the single count of the Superseding

Indictment and found that defendant possessed with the intent to distribute more than fifty grams

of crack cocaine.

The Court summarizes the evidence relevant to defendant's Motion for New Trial below,

omitting any discussion of the witnesses whose testimony does not bear on the issues presented

by the motion.

### A.       Circumstances Surrounding Defendant's Arrest; Chemical Analysis

The evidence at trial established that, at approximately 1:45 p.m. on February 22, 2009,

Officer James Robertson of the Philadelphia Police Department received a radio call reporting

that a light-complexioned black male wearing a tan shirt and blue pants was assaulting a

pregnant female at the intersection of 27th Street and Cecil B. Moore Avenue in Philadelphia.

Officer Robertson drove his patrol car to that location, where he saw defendant—a light-

complexioned black male, wearing a tan shirt and blue pants—standing at the southwest corner

of the intersection.  Officer Robertson did not observe a pregnant female in the vicinity, although

he did see one other man standing a short distance away on Cecil B. Moore Avenue.

After identifying himself, Officer Robertson approached defendant, who was sweating

even though he was not dressed warmly and the weather was cold.  Defendant refused to state his

name or provide identification.  Officer Robertson observed a large bulge in defendant's front

left pocket.  During a patdown to check defendant for weapons, Officer Robertson felt the bulge

and immediately believed it to be a large number of plastic packets containing crack cocaine. Officer Robertson reached into defendant's pocket and removed the items, which turned out to be a total of sixty-six plastic packets of varying sizes containing crack cocaine.[1]  Some of the packets were "bundled" together in larger plastic packaging.  Officer Robertson arrested defendant and later recovered $630 in United States currency from defendant, in denominations as follows: one $100 bill, sixteen $20 bills, twenty $10 bills, and two $5 bills.  (See Property Receipt No. 2843729, Gov't Trial Ex. 3.)

The government moved the crack cocaine into evidence as Exhibit 2.  Philadelphia Police Department Chemical Analyst Amy Richardson testified that she analyzed and weighed the crack cocaine on May 18, 2009.  When a package contained multiple smaller packets, Richardson stated that she followed standard procedure by testing and weighing only one of the smaller packets as a sample.  Richardson testified that the crack cocaine was in five packages as follows: (1) a clear plastic bag containing 41.53 grams of crack cocaine; (2) a clear plastic bag containing 13.80 grams of crack cocaine; (3) a clear plastic bag containing 8 purple Ziploc packets, one of which contained 144 milligrams of crack cocaine; (4) a clear plastic bag containing 13 Ziploc packets, one of which contained 190 milligrams of crack cocaine; and (5) a clear plastic bag containing 43 Ziploc packets (17 green, 26 clear), one of which contained 173 milligrams of crack cocaine.  (See also Chemistry Laboratory Report 09-03453, Gov't Trial Ex. 2A, at 1–3.)  The total weight of the packets Richardson actually weighed—items (1), (2), and one sample packet from items (3), (4), and (5), without accounting for the unweighed packets in items (3), (4) and (5)—was 55.837 grams of crack cocaine.

---

[1] Defendant did not contest the identity of the controlled substance, but the Court notes that Philadelphia Police Department Officer Timothy Bogan testified that the field test he performed was positive for crack cocaine, which was confirmed by chemical analysis as discussed infra.

       **B.**       **Testimony of Special Agent Randy Updegraff**

Defendant's Motion for New Trial focuses on the testimony of Randy Updegraff, a Drug Enforcement Administration ("DEA") Special Agent with thirteen years' experience. Updegraff testified that he had been involved with approximately 1,000 narcotics cases, the majority of which involved possession with intent to distribute or distribution of either powder cocaine or crack cocaine. On the government's motion, the Court permitted Updegraff to offer expert testimony in the field of narcotics trafficking and drug identification.

Updegraff testified as to how cocaine and crack cocaine are manufactured, distributed, and used, from the harvesting of coca plants in countries like Colombia and Peru through transport into the United States and to eventual purchase and use by consumers. Crack cocaine is broken down into progressively smaller amounts for distribution as it proceeds from bulk importers to street-level sellers. It was Updegraff's testimony that consumers generally purchase single-use "dime bags" of crack cocaine, which sell for $10. Each dime bag contains approximately one-tenth of a gram of cocaine. Consumers, also called "street users," are generally addicts who use all the crack cocaine in their possession and purchase additional crack cocaine as soon as they have enough money, spending all of their new funds. Therefore, Updegraff testified, street users do not stockpile crack cocaine and ordinarily have no more than one to three dime bags in their possession at any given time.

According to Updegraff, individuals who sell crack cocaine to street users—also called "street dealers" or "low-level sellers"—usually purchase crack cocaine in one of two ways. They either buy "bundles" of thirteen dime bags or they buy an equivalent bulk amount, which they apportion and package themselves. Street dealers sometimes prefer the latter option because they can make additional profit from diluting or adulterating the crack cocaine.

Updegraff testified that, in Philadelphia, a bundle generally consists of thirteen dime bags of crack cocaine placed into the corner of a large plastic bag, with the larger plastic bag tied into a knot to keep the dime bags in place.

Updegraff opined that the 55.837 grams of crack cocaine defendant possessed would represent approximately 550 dime bags. The selling price of each dime bag was $10. Thus, the street value of 550 dime bags was approximately $5500. Updegraff estimated that the wholesale value of 55.837 grams of crack cocaine is approximately $2000 to $2200.

Updegraff testified that the amount of crack cocaine and money defendant possessed, as well as the way the crack cocaine was packaged, was consistent with possession with intent to distribute, not mere possession for consumption. Specifically, Updegraff stated that these items were consistent with what would be in possession of a mid-level dealer—i.e., a dealer who sells to street dealers, who in turn sell to consumers. He opined that the amount of crack cocaine was not consistent with use because street users do not "stockpile" large numbers of dime bags. Street users would possess one-to-five dime bags of crack cocaine or possibly up to a bundle's worth, not an amount equivalent to 550 dime bags. Moreover, the quantity of crack cocaine found on defendant—which would likely last a street user over a month—and the amount of money, $630, were not consistent with a street user's cycle of purchasing a small number of dime bags, collecting more funds, then spending all of the collected funds as soon as possible on more crack cocaine.

On cross-examination, Updegraff conceded that he had not participated in any federal criminal prosecution of simple possession of controlled substances, although he had done so in state prosecutions.

**C.    Motions for Judgment of Acquittal; Jury Charge; Parties' Arguments; Jury Verdict**

Defendant's counsel moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a) at the conclusion of the government's case, arguing that there was insufficient evidence of drug trafficking or distribution.  The Court denied the motion on the ground that the jury could reasonably find defendant intended to distribute the crack cocaine based on the drug quantity, the way in which the drugs were packaged, and the small denominations of the bills found on defendant.

During the charging conference, defendant requested that the Court charge the jury on the lesser-included offense of possession of a controlled substance, and the government agreed. Accordingly, the Court gave the Third Circuit standard jury instructions for both possession of a controlled substance with intent to distribute, 3d Cir. Model Jury Instr. § 6.21.841A, as revised February 2012, and possession of a controlled substance, 3d Cir. Model Jury Instr. § 6.21.844, as revised February 2012, and the standard instruction for lesser-included offenses, 3d Cir. Model Jury Instr. § 3.11.  The verdict form also reflected the lesser-included offense.  As to the testimony of Richardson and Updegraff, the Court also gave the standard jury instruction regarding opinion evidence offered by expert witnesses, 3d Cir. Model Jury Instr. § 4.08.

In his closing argument, defendant's counsel repeatedly emphasized the lack of direct evidence that defendant sold crack cocaine.  He asked the jury to find that the government had not proven beyond a reasonable doubt that defendant intended to distribute the drugs. Defendant's counsel argued that the jury should discount Updegraff's testimony for two reasons: first, because as a DEA agent, he was predisposed to testify in the government's favor; and second, because Updegraff's admission that he had not participated in a federal prosecution for

simple possession of narcotics showed that he never considered the possibility that defendant intended to use the crack cocaine instead of selling it.

The jury began deliberating at approximately 12:30 p.m. on April 25, 2012. At 12:40 p.m., the jury sent a note asking, inter alia, "What is the definition of trafficking?" Based on the agreement of the parties, the Court directed the jurors to the Third Circuit standard jury instruction entitled "'With Intent to Distribute' Defined," 3d Cir. Model Jury Instr. § 6.21.841-5, which the Court had given as part of its charge. At 1:12 p.m., the jury sent a note asking to "see [the] controlled substance." Again by agreement of the parties, the jury returned to the courtroom, and each juror was able to handle the crack cocaine in a sealed package.

On April 26, 2012, the jury resumed deliberating. It sent a note at 9:55 a.m. stating, "The jury is deadlocked." By agreement of the parties, the Court instructed the jury to continue deliberating. At 10:55 a.m., the jury sent another note in which it asked to have "access to transcripts/recordings" of the testimony of Officer Robertson, Richardson, and Updegraff. The parties agreed that the jury should be allowed to listen to the entirety of those three witnesses' testimony through the Court's audio playback system, and the Court granted the jury's request. Following the replay of the testimony, the jury resumed deliberating at 3:20 p.m. and informed the Court that they had reached a verdict at 4:05 p.m.

The jury found defendant guilty of the charged offense, possession of a controlled substance with intent to distribute. The jury also found that defendant knowingly and intentionally possessed with intent to distribute fifty or more grams of crack cocaine.[2]

_____

[2] The Fair Sentencing Act of 2010 ("FSA"), enacted August 3, 2010, significantly modified the penalties applicable to crack cocaine offenses, including both the charged offense and the lesser-included offense in this case. Defendant originally faced a mandatory minimum of life imprisonment if found responsible for possession with intent to distribute the charged amount of

Defendant's counsel moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c), again based on the allegedly insufficient evidence that defendant intended to distribute the crack cocaine.  The Court denied the motion for the same reasons it denied the earlier oral motion for judgment of acquittal.

## III.    LEGAL STANDARD—MOTION FOR NEW TRIAL

Under Rule 33(a) of the Federal Rules of Criminal Procedure, the Court may grant a motion for a new trial if the interest of justice so requires.  A motion for new trial pursuant to Rule 33 is directed to the sound discretion of the Court, United States v. Rottschaefer, 178 F. App'x 145, 149 (3d Cir. 2006), and the Court must exercise its own judgment in reviewing the evidence instead of viewing the evidence in the light most favorable to the government, United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002).  The Court may grant a motion for a new trial if "'there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'"  United States v. Silveus, 542 F.3d 993, 1004–05 (3d Cir. 2008) (quoting Johnson, 302 F.3d at 150).   The Court also must grant a motion for new trial if error "'so infected the jury's deliberations that [it] had a substantial influence on the outcome of the trial.'"  United States v. Copple, 24 F.3d 535, 547 n.17 (3d Cir. 1994) (quoting United States v. Thornton, 1 F.3d 149, 156 (3d Cir. 1993); other citations omitted).  "Nevertheless, '[t]he

---

crack cocaine, approximately fifty-five grams.  The FSA reduced the mandatory minimum penalty applicable in this case to ten years.  The Third Circuit has held that the FSA is retroactive to defendants who committed an offense before the FSA's enactment and are sentenced after the enactment.  United States v. Dixon, 648 F.3d 195, 203 (3d Cir. 2011).  That same issue is presently pending before the United States Supreme Court in Dorsey v. United States and Hill v. United States, Nos. 11-5683 & 11-5721, in which a decision is expected this Term.  The parties agreed that, to avoid a retrial in the event that the Supreme Court determines that the FSA is not retroactive, the jury interrogatories should cover the drug quantities that are pertinent under both the old and new versions of the FSA.

burden is on the defendant to show that a new trial ought to be granted.'"  <u>United States v.</u>

<u>Georgiou</u>, 742 F. Supp. 2d 613, 628 (E.D. Pa. 2010) (quoting <u>United States v. Clovis</u>, No. 94-11,

1996 WL 165011, at *2 (D.V.I. Feb. 12, 1996)).

## IV.   DISCUSSION

### A.   Parties' Arguments

Defendant argues that "[t]he cumulative errors charged in this case are the testimony of

'expert' law enforcement officers[3] who opined that Mr. Robinson was a drug trafficker and not

merely a possessor."  (Mem. Supp. Mot. New Trial ("Def. Mem.") 3.)  Defendant references the

oral motions for a judgment of acquittal presented by counsel at trial, which were based on the

argument "that the jury's verdict . . . was premised on the testimony of a non-percipient DEA

witness who testified as an expert."  (<u>Id.</u> at 1.)   In addition, defendant asserts that his Motion for

New Trial is "predicated on a claim of actual innocence, cumulative trial error, insufficiency of

the evidence, and any other colorable basis for a new trial."  (Mot. New Trial ("Def. Mot.") 1.)

---

[3] The Court construes defendant's primary argument in his Motion for New Trial to be that
Updegraff, as an expert witness, gave improper testimony as to defendant's intent to distribute
crack cocaine. To the extent that defendant's motion could be construed to challenge the
testimony of Officer Timothy Bogan, (<u>see</u> Def. Mem. 3 (referring to the "testimony of 'expert'
law enforcement officers" (emphasis added))), the motion is also denied. Officer Bogan stated
that, based on his personal observation of the crack cocaine while he was performing the field
test, the packaging and large quantity were consistent with drug distribution.  This testimony was
superfluous given Updegraff's testimony, as the parties' arguments during trial—especially
defendant's counsel's closing statement and Rule 29 motions—repeatedly demonstrated by
focusing on Updegraff and ignoring Bogan.  Further, Bogan was never offered as an expert, and
his testimony was proper.  His opinion that the packaging and drug quantity were consistent with
distribution "was the sort of conclusion that any reasonable layperson could have reached" and
"did not reflect any particular expertise." <u>United States v. Barrett</u>, 394 F. App'x 866, 870 (3d
Cir. 2010) (holding that officer's testimony that evidence was consistent with "'large-scale' drug
operation" was proper lay opinion under Rule 701).

The Court—like the government, (see Gov't Resp. Def.'s Mot. New Trial ("Gov't Resp.") 4)—understands defendant to be raising two claims: first, that the Court erred in permitting Updegraff to testify as an expert, and second, that the government's evidence was insufficient to prove that defendant possessed the crack cocaine with intent to distribute. The government opposes defendant's motion, asserting that there was "overwhelming evidence" of defendant's guilt. (Id. at 5.)

**B.        Updegraff's Expert Testimony**

The Court first addresses defendant's argument that the Court improperly permitted Updegraff's testimony. The Court construes defendant's motion to argue that Updegraff's testimony violated Federal Rule of Evidence 704(b), which provides, "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." The Court rejects this argument as it is squarely foreclosed by precedent.

In United States v. Davis, 397 F.3d 173 (2005), the Third Circuit defined the limits of proper expert testimony regarding simple possession of a controlled substance versus possession with intent to distribute. In Davis, a police officer who testified as an expert witness in the field of drug trafficking opined that the defendants' possession of large numbers of packets of cocaine base along with weapons was "consistent" with "intent to distribute." Id. at 179. The Third Circuit held that this testimony did not violate Rule 704(b) because it was "given in response to hypothetical, rather than specific, questions regarding the intent of individual defendants on trial" and because "no evidence was presented that [the officer] had any direct relationship with the investigation or the defendants and, therefore, there was no potential for the jury to conclude that

[the officer] had any special insight into the thoughts or intent of the defendants."  Id.  In

reaching this conclusion, the Davis court distinguished United States v. Watson, 260 F.3d 301,

305, 308–10 (3d Cir. 2001), in which the Third Circuit found that Rule 704(b) was violated.  In

Watson, the prosecutor repeatedly and pointedly asked multiple witnesses questions as to

whether Watson, the defendant, had the intent to distribute the marihuana and crack cocaine he

possessed, such as: "have you formed an opinion, as to whether or not the substance . . . was

possess [sic] with the intent to distribute, transfer or deliver or the intent to personally use that

drug?"  Id.; see also United States v. Underwood, 246 F. App'x 92, 96 n.3 (3d Cir. 2007)

(holding that Rule 704(b) was violated by expert's testimony that, inter alia, "your client

possessed [the narcotics] with the intent to deliver them").

     In this case, as in Davis, Updegraff was a witness with no "direct relationship with the

investigation or the defendant[]."  Davis, 397 F.3d at 178.  In addition, as in Davis, the

government was careful to ask hypothetical questions about whether "possession under the

circumstances was 'consistent' with 'intent to distribute,'" id., never asking Updegraff to invade

the province of the jury by expressing an opinion as to whether defendant intended to distribute

the fifty-five grams of cocaine or use them himself.   As the government notes, the testimony

was not "specifically that Robinson was a drug trafficker but rather . . . that the quantity and

packaging of the cocaine base ("crack") and the money recovered in this case was indicative of a

mid-level drug trafficker and possession with intent to distribute, rather than possession for

personal use."  (Gov't Resp. 4.)  Because Updegraff did not express an opinion as to defendant's

intent, his testimony did not cross the line set forth in Davis and Watson.  See United States v.

Burton, 404 F. App'x 617, 623 (3d Cir. 2010) (rejecting challenge to expert testimony under

Rule 704(b) where detective "described the relevance of the drug evidence admitted in the case"

-11-

and his testimony "simply supported the inference that the evidence admitted in the case was indicative of someone who distributed crack cocaine").

Accordingly, the Court concludes that Updegraff's testimony regarding possession with intent to distribute as opposed to mere possession was proper and did not violate Rule 704(b).

### C.     Denial of Motions for Judgment of Acquittal

Defendant's Motion for New Trial is also denied to the extent that it reasserts the argument his counsel made in support of his oral motions for judgment of acquittal—that the evidence was insufficient to sustain a conviction for possession with intent to distribute as opposed to mere possession.  The government did not need to introduce direct evidence of narcotics transactions, such as undercover purchases or surveillance of sales made by defendant, because intent to distribute controlled substances can be proven through circumstantial evidence. See Johnson, 302 F.3d at 149.  Overwhelming circumstantial evidence was present in this case in the form of drug quantity, the way in which the crack cocaine was packaged, the absence of drug use paraphernalia, and the small denominations of the bills found on defendant.  See United States v. Johnson, 452 F. App'x 219, 223 (3d Cir. 2011) (possession of eighty-seven individually wrapped rocks of crack cocaine and absence of drug use paraphernalia was evidence of intent to distribute); United States v. Brooks, 48 F. App'x 837, 840–41 (3d Cir. 2002) (possession of, inter alia, bills in small denominations and thirty bags of crack cocaine in a "bundle" was evidence of intent to distribute); United States v. Rodriguez, 961 F.2d 1089, 1093 (3d Cir. 1992) ("When a defendant is found in possession of a sufficiently large quantity of drugs, an intent to distribute may logically be inferred from the quantity of drugs alone.").  The Court thus concludes that defendant's conviction for possession with intent to distribute crack cocaine was supported by the evidence, and reaffirms the denial of defendant's motions for judgment of acquittal.

**D.      Conclusion**

This is not a case in which "there is a serious danger that a miscarriage of justice has

occurred,"   Silveus, 542 F.3d at 1004–05 (quotation marks omitted), nor is it one in which trial

error "so infected the jury's deliberations that [it] had a substantial influence on the outcome of

the trial,'" Copple, 24 F.3d at 547 n.17.  Thus, the interests of justice do not require a new trial,

and the Court denies defendant's motion.

**V.      CONCLUSION**

Because Updegraff's expert testimony was proper and because the evidence was

sufficient to sustain defendant's conviction for possession with intent to distribute crack cocaine,

defendant's Motion for New Trial is denied.

An appropriate Order follows.